UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID GEORGE DALE,

     Plaintiff,

v.                              Case No.:  6:20-cv-1507-GKS-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff David George Dale filed a Complaint on August 19, 2020.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying his claim for a period of disability,

disability insurance benefits, and supplemental security income.  The Commissioner

filed the transcript of the administrative proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number), and the parties filed a joint memorandum

detailing their respective positions.  (Doc. 28).  For the reasons set forth herein, the

Undersigned recommends that the decision of the Commissioner be **AFFIRMED**

pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.   Procedural History

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income benefits on February 16, 2018, alleging a disability onset date of December 7, 2017.  (Tr. at 17, 291-300).[1]  Plaintiff's claims were initially denied on April 19, 2018, and again upon reconsideration on August 20, 2018.  (*Id.* at 17, 164-174, 178-191).  On November 7, 2019, Administrative Law Judge ("ALJ") Thomas Auble held a hearing that Plaintiff and his attorney attended.  (*Id.* at 37-84).  The ALJ issued an unfavorable decision on November 22, 2019.  (*Id.* at 17-31).  The Appeals Council subsequently denied Plaintiff's request for review on July 1, 2020.  (*Id.* at 1-3).  Plaintiff filed his Complaint in this Court on August 19, 2020.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

III.      **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine

whether a claimant has proven he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F.

App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.

1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial

gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets

or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1; (4) can perform his or her past relevant work; and (5) can perform other

work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232,

1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four

and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of

Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the

Social Security Act through March 31, 2018.  (Tr. at 19).  At step one, the ALJ found

Plaintiff had not engaged in substantial gainful activity since the alleged onset date of

December 7, 2017.  (*Id.*).  At step two, the ALJ found that Plaintiff has the following

severe impairments:  "attention deficit hyperactive disorder ('ADHD'); depression;

and a reading disorder (20 [C.F.R. §§] 404.1520(c) and 416.920(c))."  (*Id.*).  The ALJ,

at step three, determined that Plaintiff "does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed

3

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§]

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 916.926)." (*Id.* at 20).

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity [("RFC")] to perform a
> full range of work at all exertional levels but with the
> following non-exertional limitations:   he can have no
> exposure to unprotected heights or hazardous machinery;
> he can perform simple, routine tasks in a low stress job,
> defined as having only occasional decision making and only
> occasional changes in work setting, and such work can have
> no production quota (e.g., no strict production standard and
> no rigid production pace, such as an automated line that the
> worker cannot control); he can have only occasional
> interaction with the public and coworkers that is brief and
> superficial; and only occasional supervision.

(*Id.* at 22).

The ALJ determined that Plaintiff does not have any past relevant work, citing

20 C.F.R. §§ 404.1565 and 416.965.  (*Id.* at 29).  Additionally, at step five,

"[c]onsidering the claimant's age, education, work experience, and [RFC]," the ALJ

determined that "there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 [C.F.R. §§] 404.1569, 404.1569(a),

404.969, and 416.969(a))." (*Id.* at 30).  Accordingly, the ALJ found that "[t]he

claimant has not been under a disability, as defined in the Social Security Act, from

December 7, 2017, through the date of this decision (20 [C.F.R. §§] 404.1520(g) and

416.920(g))." (*Id.*).

## IV.      Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises two issues.  As stated by the parties, the issues are:

1.      Whether the Commissioner correctly applied the legal standards to the analysis of the entire record and whether the medical and testimonial evidence was given proper weight and consideration, in making the determination, in Plaintiff's claim for benefits; and

2.      Whether the Commissioner correctly evaluated and explained the combined effect of Plaintiff's [i]mpairments and the use of that evaluation in determining the totality of Plaintiff's limitations, as applicable to the residual functional capacity of Plaintiff.

(Doc. 28 at 23, 48).  The Undersigned addresses each issue in turn below.

**A.      The ALJ Properly Considered and Evaluated the Evidence of Record and His Determination Is Supported by Substantial Evidence.**

Plaintiff broadly argues that the ALJ failed to consider or assess the evidence of record and, therefore, his decision is unsupported by substantial evidence.  (*See* Doc. 28 at 23-32).  In support, Plaintiff makes several assertions regarding the ALJ's assessment of the evidence, which the Undersigned addresses as five distinct sub-issues.  The sub-issues presented by Plaintiff are essentially as follows:  (1) whether the ALJ erred by failing to address "unmentioned" impairments and account for Plaintiff's reading disorder, (*id.* at 24, 26, 31-32); (2) whether the ALJ erred in his determination of the persuasiveness of the medical opinions in the record, (*id.* at 25-27); (3) whether the ALJ erred in his assessment of the non-medical evidence of record, (*id.* at 26-28); (4) whether the ALJ erred in his assessment of the Paragraph B criteria, (*id.* at 29-30); and (5) whether the ALJ erred by misrepresenting portions of the record, (*id.* at 29-32).

6

In response, the Commissioner asserts that Plaintiff's "shotgun approach . . . fails to supply a reasoned basis for remand." (*Id.* at 32-33). The Commissioner continues by responding to each of Plaintiff's specific arguments. (*See id.* at 33-47). In sum, the Commissioner contends that the ALJ thoroughly considered the evidence of record and substantial evidence supports his findings. (*See id.*).

As a threshold consideration, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). Plaintiff's portion of the Joint Memorandum lacks any acknowledgement of, argument based upon, or application of the SSA's new regulations. If Plaintiff impliedly maintains that the Social Security Administration's 2017 revised regulations do not apply to his case, the Undersigned disagrees. Because Plaintiff filed his applications for benefits after March 27, 2017, (*see* Tr. at 17, 291-300), the revised regulations apply.

The Undersigned next addresses each construed sub-issue below.

### 1.   The ALJ Properly Accounted for Plaintiff's Impairments.

Within the first sub-issue, Plaintiff essentially argues that the ALJ erred by failing to (1) address six of Plaintiff's impairments and (2) include limitations to account for Plaintiff's reading disorder. (*See* Doc. 28 at 24, 26, 31-32).

Specifically, Plaintiff asserts that the ALJ failed to "properly evaluate" Plaintiff's "myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, vitamin D deficiency, and depression," (the "unmentioned diagnoses"). (*Id.* at 24).

Plaintiff argues that the ALJ's error is evinced by his "fail[ure] to even acknowledge [the impairments]." (*Id.*).

Additionally, Plaintiff contends that the ALJ erred by failing to include any limitations in the RFC to account for Plaintiff's reading disorder. (*Id.*). Plaintiff asserts that the ALJ committed this error despite: (1) characterizing Plaintiff's reading disorder as a severe impairment, (*id.*); and (2) finding a prior disability determination that accounted for Plaintiff's reading impairment mostly persuasive, (*id.* at 26). Relatedly, Plaintiff claims that the ALJ erred by finding that Plaintiff "has at least a high school education and is able to communicate in English." (*See* Doc. 28 at 31-32 (quotations omitted) (citing Tr. at 29; 20 C.F.R. §§ 404.1564, 416.964 (2019))).[2]

In response, the Commissioner asserts that the ALJ did not err by failing to discuss every diagnosis in Plaintiff's record because the ALJ is not required to discuss every piece of evidence. (Doc. 28 at 33 (citations omitted)). In addition, the Commissioner highlights that Plaintiff failed to identify any limitations caused by the unmentioned diagnoses. (*Id.*). Accordingly, because Plaintiff did not present

---

[2] The SSA revised the rules regarding the inability to communicate in English as an educational category for claims filed on or after April 27, 2020. *Compare* 20 C.F.R. §§ 404.1564, 416.964 (2019), *with* 20 C.F.R. §§ 404.1564, 416.964 (2021); *see also* Removing Inability to Communicate in English as an Education Category, 85 Fed. Reg. 10586-01, 2020 WL 885690 (Feb. 25, 2020). The new regulations regarding the inability to communicate in English do not apply in Plaintiff's case because Plaintiff filed his claim before April 27, 2020. Neither party asserts that the new regulations apply.

evidence of overlooked limitations, the Commissioner contends that the ALJ's RFC finding is supported by substantial evidence. (*Id.* (citations omitted)).

Regarding Plaintiff's severe reading disorder, the Commissioner claims that the ALJ was not required to incorporate specific limitations to account for it in the RFC because "substantial evidence shows Plaintiff could engage in simple, routine tasks, despite his reading disorder." (*Id.* at 35 (citing Tr. at 23, 24, 47-49, 322-28, 409)).

Moreover, the Commissioner takes issue with Plaintiff's argument that Plaintiff cannot communicate in English under 20 C.F.R. §§ 404.1564(a)(5), 416.964(a)(5). (Doc. 28 at 36). Specifically, the Commissioner asserts that Plaintiff's argument misinterprets the regulations because they are intended to apply to individuals "who cannot speak or understand English because their education occurred in a foreign language." (Doc. 28 at 36 (citations omitted)). Further, the Commissioner contends that the ALJ did not err by finding that Plaintiff can communicate in English and has a high school education because he "completed school through the 12th grade [with] a good GPA [even though he] did not pass the language portion of the graduation examination." (*Id.* at 37 (citing Tr. at 409)). Finally, the Commissioner contends that even if the ALJ erred in assessing Plaintiff's educational background, any error was harmless because the ALJ limited Plaintiff to simple, routine work in the RFC to account for Plaintiff's reading disorder. (*Id.*).

### i.   The ALJ Did Not Err by Failing to Discuss Plaintiff's Unmentioned Diagnoses.

First, as to Plaintiff's argument that the ALJ erred by failing to evaluate Plaintiff's "myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, vitamin D deficiency, and depression," the Undersigned is not persuaded.

The Eleventh Circuit has found that the failure to (1) list an impairment in an application for disability benefits and (2) testify at the hearing that a plaintiff suffered from an impairment to the extent that it would prevent him from working, can be sufficient to dispose of any claims related to those impairments. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) ("[I]t has been previously held that an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." (quotations and citation omitted)).

Additionally, "a diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on [his] ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quotations and citation omitted).  Put differently, Plaintiff must show that his diagnoses cause functional limitations to establish his disability.  *See Moore v. Barnhart*, 405 F.3d 1208, 1214 n.6 (11th Cir. 2005); *see also Osborn v. Barnhart*, 194 F. App'x 654, 668 (11th Cir. 2006) (discounting physician's "medical records [that]

reveal only diagnoses, not reasoned and medically-supported opinions detailing [the plaintiff's] work limitations or limited functions").

Regarding Plaintiff's diagnosis of depression, the ALJ specifically found that Plaintiff's depression was a severe impairment. (Tr. at 19). Additionally, the ALJ assessed the evidence related to Plaintiff's depression and its associated limitations in his decision. (*See id.* at 22-29). Thus, Plaintiff's argument that the ALJ failed to "acknowledge" Plaintiff's depression is unavailing. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].").

The Undersigned also finds Plaintiff's argument as to the other five unmentioned diagnoses unpersuasive. In fact, Plaintiff has not cited, and the Undersigned cannot find, any reference to myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, or a vitamin D deficiency in Plaintiff's disability application or disability reports. (*See* Tr. at 316, 340, 354). Nor does Plaintiff cite to any portion of the hearing transcript, and the Undersigned can find none, in which he or his representative mention or discuss the limitations originating from myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, or a vitamin D deficiency. (*See id.* at 39-84). Rather, the unmentioned impairments merely appear to be diagnoses reported in a minimal number of Plaintiff's medical records. (*See, e.g.*, *id.* at 150, 403, 423, 429). Thus, the Undersigned finds that Plaintiff's failure to raise these five unmentioned impairments in his disability application or at the hearing is enough to dispose of his argument. *See Street*, 133 F. App'x at 627.

The Undersigned finds that Plaintiff's argument also fails because a mere reference to a diagnosis or symptom in the medical record is insufficient to establish the existence of a functional limitation that the ALJ must assess and account for in his decision. *See Willyard v. Saul*, No. 8:19-cv-2537-T-TGW, 2020 WL 7074467, at *4 (M.D. Fla. Dec. 3, 2020) ("[A] claimant cannot prove disability simply by reference to symptoms."). Accordingly, because Plaintiff fails to identify any specific limitations that relate to the unmentioned diagnoses, he fails to show how the RFC is unsupported by substantial evidence. *See Wind*, 133 F. App'x at 690; *Moore*, 405 F.3d at 1214 n.6.

### ii.     The ALJ Did Not Err in His Assessment of Plaintiff's Reading Disability.

Second, Plaintiff's argument based upon on his reading ability fails because he does not identify the specific limitations that the ALJ allegedly failed to include in the RFC.

As stated above, "a diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on [his] ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quotations and citation omitted). Put differently, Plaintiff must show that his diagnoses cause functional limitations to establish his disability. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 n.6 (11th Cir. 2005); *see also Osborn v. Barnhart*, 194 F. App'x 654, 668 (11th Cir. 2006) (discounting a physician's "medical records [that]

reveal only diagnoses, not reasoned and medically-supported opinions detailing [the plaintiff's] work limitations or limited functions").

Upon review of the record, the Undersigned finds that the ALJ specifically analyzed and accounted for Plaintiff's reading disorder.  The ALJ specifically found Plaintiff's reading disorder to be a severe impairment at step two of the sequential evaluation.  Thereafter, at step four, the ALJ noted that both Plaintiff and his mother reported and testified that Plaintiff has reading difficulties but was not in special education and received a certificate of completion of high school.  (Tr. at 23 (citing Tr. at 46, 68, 322-28, 330-37, 349)).

The ALJ also considered Dr. Rivera's December 2018 Psychological Evaluation Report, in which Dr. Rivera administered the "Woodcock-Johnson IV Tests of Achievement" to assess Plaintiff's academic functioning.  (*Id.* at 24 (citing Tr. at 435-46)).  As a result of the objective academic functioning test, Dr. Rivera found that "[r]egarding word identification skills, [Plaintiff's] scores were in the Average range[, his] abilities for sentence reading fluency and reading comprehension were in the Low Average range[, and h]is overall performance in reading was in the Low Average range (Standard Score of 83)."  (*Id.* at 438, 446). The ALJ specifically reviewed this record and stated that "Dr. Rivera noted that . . . a diagnosis of learning disabilities was not appropriate."  (*Id.* at 24 (citing Tr. at 435-46)).

Additionally, the ALJ assessed Dr. Vilar's October 2013 Psychological Evaluation in which Dr. Vilar administered the "Wechsler Individual Achievement

Test-Third Edition" and found that Plaintiff "performed well on tasks of basic reading, including word identification, word decoding . . . , and reading fluency. Reading comprehension, however, was significant [sic] below expectation." (*Id.* at 27 (citing Tr. at 382-93)).  While the ALJ evaluated Dr. Vilar's diagnosis of "Reading Disorder," he found Dr. Vilar's opinion only slightly persuasive because the assessment was completed over four years before Plaintiff filed the instant application for disability benefits.  (*Id.*).  Because the ALJ found Dr. Vilar's opinion only slightly persuasive, he was not obligated to adopt it.  *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (noting that the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding'" (citation omitted)).

Thus, the ALJ clearly assessed Plaintiff's reading difficulty and accounted for it in the RFC determination, which is supported by substantial evidence.

With respect to Plaintiff's argument that the ALJ was required to incorporate the limitations that a prior ALJ found were appropriate, (*see* Tr. at 89-101), the Undersigned is not persuaded.  Rather, the Eleventh Circuit has held that an ALJ need not give preclusive effect to a prior ALJ's RFC finding when the claimant's current application concerns an "unadjudicated time period." *McKinzie v. Comm'r of Soc. Sec.*, 363 F. App'x 71, 73 (11th Cir. 2010); *see also Moreno v. Astrue*, 366 F. App'x 23 (11th Cir. 2010); *Luckey v. Astrue*, 331 F. App'x 634 (11th Cir. 2009); *Reynolds v. Bowen*, 844 F.2d 451, 453-54 (7th Cir. 1988) (determinations on prior applications are

"completely irrelevant" to a later application for a different time period because the applications are "completely separate, distinct, and unrelated").

Plaintiff's prior RFC was rendered in connection with his application for disability benefits from October 23, 2014 through October 3, 2017.  (Tr. at 89-101).  Plaintiff's current application for benefits applies to alleged disability beginning on December 7, 2017.  (*Id.* at 17).  Accordingly, because Plaintiff's current application concerns an entirely different time period, his prior RFC is completely irrelevant to the ALJ's decision here and the ALJ was not obligated to incorporate its findings into his decision.  *See McKinzie*, 363 F. App'x at 73; *see also Reynolds*, 844 F.2d at 453-54.

Moreover, beyond the inapplicable prior disability determination, the Undersigned has not found, and Plaintiff has not cited, any other opinion in the record that recommends imposing additional RFC limitations related to Plaintiff's reading impairment.  As a result, the Undersigned is unable to analyze whether the ALJ failed to incorporate any other specific opinion in the RFC determination related to Plaintiff's reading ability.

As to whether the ALJ correctly assessed Plaintiff's reading impairment, the Undersigned notes that Plaintiff has not tried to argue what additional limitations should have been imposed as a result of the impairment.  (*See* Doc. 28 at 24, 26, 31-32).  Rather, Plaintiff essentially argues broadly that because the ALJ found that the impairment was severe, he was obligated to reconcile or explain the lack of a corresponding RFC limitation.  (*Id.* (citations omitted)).  In failing to articulate any

additional limitation that he asserts should have been imposed – or otherwise cite an opinion in which a medical source found that a limitation was necessary – Plaintiff fails to meet his burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Thus, the Undersigned finds that the ALJ properly accounted for all of Plaintiff's impairments, the ALJ's decision is supported by substantial evidence, and remand is not warranted on the grounds raised by Plaintiff in this sub-issue.

### 2. The ALJ Properly Determined the Persuasiveness of the Medical Opinions of Record.

Within the second sub-issue, Plaintiff essentially argues that the ALJ erred in his determination of the persuasiveness of several medical opinions in the record. (Doc. 28 at 25-27). Specifically, Plaintiff challenges the ALJ's failure to comply with the treating source rule while assessing Dr. Hartman's opinion. (*Id.* at 25). Plaintiff also contends that the ALJ erred when he found Dr. Solberg's, Dr. Robertson's, and Dr. Grubbs' opinions persuasive because their qualifications are not apparent in the record, it is unclear what portions of the record they reviewed, and their opinions were issued early enough that they did not benefit from reviewing medical records created after 2018. (*Id.* at 25-26). Finally, Plaintiff asserts that the ALJ erred when he discounted the persuasiveness of Dr. Rivera's opinion because Dr. Rivera had a limited treatment history with Plaintiff. (*Id.* at 27).

In response, the Commissioner argues that the 2017 revised regulations apply to Plaintiff's case and, under them, the ALJ correctly analyzed and determined the persuasiveness of all the medical evidence.  (*Id.* at 38-46).

As noted above, the Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff filed his claim after March 27, 2017, the revised regulations apply.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  The regulations require that an ALJ apply the same factors in the consideration of opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the Social Security Administration's 2017 revised regulations override the Eleventh Circuit's treating source rule.  *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard

are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases in support of the same proposition).

Here, as stated above, Plaintiff entirely fails to address whether the SSA's 2017 revised regulations apply to his claims.  Similarly, Plaintiff fails to address the Commissioner's argument that the Social Security Administration's 2017 revised regulations invalidate the Eleventh Circuit's treating source rule.  (*See* Doc. 28).  Nonetheless, because the result remains the same under both standards in this case, the Court need not resolve the conflict.

First, under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only

explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, under Eleventh Circuit precedent, the ALJ must show "good cause" to discredit the *opinion* of a treating physician.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

"Good cause exists when the:  (1) treating physician's *opinion* was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's *opinion* was conclusory or inconsistent with the doctor's own medical records." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (emphasis added) (quotations omitted) (citing *Phillips*, 357 F.3d at 1241).  "The ALJ must clearly articulate the reasons for giving less weight to the *opinion* of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440 (emphasis added).

Here, Plaintiff challenges the ALJ's assessment of the persuasiveness of Dr. Hartman's, Dr. Solberg's, Dr. Robertson's, Dr. Grubbs', and Dr. Rivera's opinions. (Doc. 28 at 25-27).  To assess whether the ALJ's findings are supported by substantial evidence, the Undersigned reviews below (1) how the ALJ determined the persuasiveness of each opinion and (2) whether good cause exists to discredit each opinion.

As to Dr. Hartman's "opinion," Plaintiff asserts that the ALJ erred by failing to afford a specific weight "to the opinions of Plaintiff's treating physician, Dr. Hancock [sic]."[3]  (*See* Doc. 28 at 24-25).  Yet, Plaintiff fails to cite a specific treatment note or record that he argues contains an opinion.  (*See id.*).  Importantly, not all treatment notes constitute opinions under the regulations.  *See* 20 C.F.R. §§

---

[3]  Plaintiff refers to his treating physician as "Dr. Hancock."  (*See* Doc. 28).  Upon a review of the record, however, the Undersigned cannot locate a physician named Dr. Hancock.  Rather, it appears that Plaintiff is referring to his treating physician Dr. Hartman.

404.1513(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions.").  By failing to cite to any records, the Undersigned is left to guess as to which of Dr. Hartman's treatment notes Plaintiff contends constitutes a medical opinion.  Upon a review of Dr. Hartman's records, however, the Undersigned cannot readily identify any apparent "medical opinions" falling within the regulation's definition.  *See id.*; *see also Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (finding that a treating physician's medical records that did not address the claimant's ability to work did not constitute medical opinions such that the ALJ was required to assign them weight); *Stowe v. Soc. Sec. Admin., Comm'r*, No. 20-14025, 2021 WL 2912477, at *7 (11th Cir. July 12, 2021) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) for the proposition that "a party abandons a claim not adequately briefed on appeal and fails to adequately brief [a] claim when he raises it in a perfunctory manner without supporting arguments or authority").  Thus, the Undersigned finds that the ALJ did not err by failing to determine the persuasiveness of Dr. Hartman's records, because none of them have been identified as medical opinions within the meaning of the SSA's revised regulations.

As for Dr. Solberg's, Dr. Robertson's, and Dr. Grubbs' opinions, Plaintiff argues that the ALJ should not have found them persuasive.  The Undersigned disagrees.

First, Plaintiff asserts that there is no indication in the record that these doctors possessed the expertise to render persuasive opinions.  However, the regulations make it clear that, as State agency medical and psychological consultants, Dr. Solberg, Dr. Robertson, and Dr. Grubbs are "highly qualified and experts in Social Security disability evaluation[s]."  20 C.F.R. §§ 404.1513a, 416.913a.  Similarly, the Eleventh Circuit has held that "[t]he ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation."  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (quotations and citation omitted); *see also* SSR 96-6p, 1996 WL 374180 (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).  While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions.  SSR 96-9p.  Thus, the Undersigned is not persuaded by Plaintiff's argument that Dr. Solberg, Dr. Robertson, and Dr. Grubbs may not possess the expertise to render persuasive opinions as it is directly contradicted by the applicable case law and regulations.

Plaintiff next argues that it is unclear which, if any, records Dr. Solberg, Dr. Robertson, and Dr. Grubbs reviewed and, even if they reviewed all the available records when they rendered their opinions, they did not have the benefit of reviewing the records created after they rendered their opinions.

Upon a review of the record, the Undersigned finds that Dr. Solberg's, Dr. Robertson's, and Dr. Grubbs' opinions specifically detail the evidence they reviewed before rendering their opinions in the "Evidence of Record" section of the Disability Determinations. (*See* Tr. at 107-08, 119-20, 134-35, 145-47). Moreover, the regulations state that State agency medical or psychological consultants "will consider the evidence in your case record and make administrative findings about the medical issues." 20 C.F.R. §§ 404.1513a, 416.913a. Upon a review of these records, the Undersigned finds that Dr. Solberg, Dr. Robertson, and Dr. Grubbs reviewed the complete record of evidence available to them before they rendered their opinions.

Regarding Plaintiff's argument that their opinions should be considered less persuasive because they did not review any records generated after they rendered their opinions, the Undersigned is similarly unpersuaded. Relevantly, the regulations specifically state that the ALJ will "consider whether new evidence . . . receive[d] after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. §§ 404.1520c, 416.920c. Stated differently, while Dr. Solberg, Dr. Robertson, and Dr. Grubbs lacked access to evidence created after they issued their opinions, the ALJ had access to the new evidence, and, therefore, he was able to determine the persuasiveness of Dr. Solberg's, Dr. Robertson's, and Dr. Grubbs' opinions in the context of that new evidence. Plaintiff has not pointed out, and the Undersigned has not found, any evidence that the ALJ did not consider while assessing Dr. Solberg's, Dr.

Robertson's, and Dr. Grubbs' opinions. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 796 (11th Cir. 2019) (finding that a state agency medical consultant's opinion can be consistent with the entire record even when that consultant issued an opinion before the record was complete).

Thus, the Undersigned finds that the ALJ's determinations of the persuasiveness of Dr. Solberg's, Dr. Robertson's, and Dr. Grubbs' opinions are supported by substantial evidence. Additionally, upon a review of the record, the Undersigned finds that the ALJ comprehensively analyzed the supportability and consistency of their opinions while determining their persuasiveness as required by 20 C.F.R. §§ 404.1520c, 416.920c.

Finally, the Undersigned is not persuaded by Plaintiff's argument that the ALJ erred by assessing the longitudinal factor of Dr. Rivera's relationship with Plaintiff while determining the persuasiveness of Dr. Rivera's opinion. Rather, while the ALJ was not *required* to state how he considered the temporal length of Dr. Rivera's treatment relationship with Plaintiff, the new regulations make it clear that the ALJ was permitted to explain how he considered that factor. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."); *see also* 20 C.F.R. §§ 404.1520c(c)(3)(ii), 416.920c(c)(3)(ii) ("Length of treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical

source has a longitudinal understanding of your impairment(s).").  Accordingly, because the ALJ analyzed the length of treatment relationship together with the consistency and supportability of Dr. Rivera's opinion, as required by 20 C.F.R. §§ 404.1520c, 416.920c, the ALJ's opinion is supported by substantial evidence.  Thus, the Undersigned finds that the ALJ's decision is due to be affirmed as to this sub-issue.

### 3.     The ALJ Properly Assessed the Nonmedical Evidence of Record.

As for the third sub-issue, Plaintiff argues that the ALJ erred in his assessment of the non-medical evidence of record.  (Doc. 28 at 26-28).  Specifically, Plaintiff takes issue with:  (1) the ALJ's failure to adopt a prior ALJ's RFC finding in a prior disability proceeding; (2) the ALJ's use of a vocational expert ("VE"); and (3) the ALJ's failure to "evaluate or weigh the written and oral testimonial evidence supplied by [Plaintiff] and his parents."  (*Id.*).

In response, the Commissioner contends that, under the new regulations, the ALJ was not required to afford any weight to the prior ALJ's decision and did not have to articulate a specific weight for Plaintiff's parents' non-medical testimony and evidence.  (*Id.* at 43, 46-47).  Additionally, the Commissioner asserts that the ALJ specifically summarized and analyzed the testimony presented by Plaintiff and his parents.  (*Id.* at 46-47 (citing Tr. at 23)).

As for the prior ALJ's RFC determination, as stated above, the ALJ here is under no obligation to impose the same limitations that a prior ALJ assessed.

Rather, the Eleventh Circuit has found that an ALJ need not give preclusive effect to a prior ALJ's RFC finding when the claimant's current application concerns an "unadjudicated time period." *McKinzie v. Comm'r of Soc. Sec.*, 363 F. App'x 71, 73 (11th Cir. 2010); *see also Moreno v. Astrue*, 366 F. App'x 23 (11th Cir. 2010); *Luckey v. Astrue*, 331 F. App'x 634 (11th Cir. 2009); *Reynolds v. Bowen*, 844 F.2d 451, 453-54 (7th Cir. 1988) (determinations on prior applications are "completely irrelevant" to a later application for a different time period because the applications are "completely separate, distinct, and unrelated").  Here, because the prior ALJ's determination concerns a different time period, (*see* Tr. at 89-101), the ALJ was not obligated to utilize that prior RFC finding.

With respect to the ALJ's use of a VE, (*see id.* at 30, 79-84), the Undersigned finds that the ALJ did not err.  In fact, the Supreme Court of the United States has highlighted the usefulness of VEs and the importance of their role in disability proceedings.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) ("ALJs often seek the views of 'vocational experts,' . . . [t]hose experts are professionals under contract with SSA to provide impartial testimony in agency proceedings . . . [and t]hey must have 'expertise' and 'current knowledge' of '[w]orking conditions and physical demands of various' jobs; '[k]nowledge of the existence and numbers of [those jobs] in the national economy'; and '[i]nvolvement in or knowledge of placing adult workers[] with disabilities[] into jobs.'" (citations omitted)).  Moreover, the Eleventh Circuit has held that "[i]f nonexertional impairments exist, the ALJ . . . must [] introduce independent evidence, *preferably* through a vocational expert's testimony,

of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted and emphasis added). Accordingly, the Undersigned finds that the ALJ did not err by relying on a VE's testimony, but rather properly used the VE's testimony to introduce evidence upon which the ALJ could properly base a decision.

As to the ALJ's assessment of Plaintiff's and his parents' written and oral testimony, the Undersigned finds that the ALJ did not err. Instead, the ALJ's decision shows that he thoroughly analyzed the non-medical testimony and considered it while determining Plaintiff's RFC. (*See* Tr. at 22-23).

The regulations state that "[e]vidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Additionally, "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Moreover, the Eleventh Circuit has found that "[t]he testimony of family members is evidence of a claimant's subjective [allegations, however, e]ven if the ALJ fails to make an explicit credibility determination as to a family member's testimony . . . , we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (quotations omitted).

Here, the record shows that the ALJ considered Plaintiff's and his parents' testimony and then determined that it was "not entirely consistent with the medical

27

evidence and other evidence in the record." (Tr. at 22-23). To begin, the ALJ specifically summarized Plaintiff's and his parents' entire testimony. (*See id.* at 23 (citing Tr. at 40-79, 322-28, 330-37, 349)). Upon a review of the testimony and statements, the information supplied by each parent was duplicative of the other parent's testimony, (*compare id.* at 65-79, *with id.* at 330-37), which in turn, was duplicative of a majority of Plaintiff's testimony, (*compare id.* at 65-79, 330-37, 349, *with id.* at 40-65, 322-28).[4] Additionally, to the extent that Plaintiff's testimony diverged from his parents' statements, the ALJ specifically summarized and considered the parents' testimony. (*See id.* at 23 ("[Plaintiff's] mother testified that [Plaintiff] . . . spends all day in his room playing video games, has no reading skills, and feels depressed and incapable, is easily distracted, and is very childlike, like a 10 years [sic] old, despite his actual age, and he gets upset easily.")). Accordingly, the Undersigned finds that the ALJ considered all of Plaintiff's and Plaintiff's parents' testimony in the RFC determination.

Furthermore, the ALJ was not required to explicitly reject Plaintiff's parents' testimony because the ALJ found that Plaintiff's testimony was "not entirely consistent with the medical evidence." (*Id.*). Essentially, the ALJ's explicit rejection of Plaintiff's testimony functioned to implicitly reject Plaintiff's parents' duplicative

---

[4] Plaintiff did not highlight a specific part of Plaintiff's or his parents' testimony that was not considered by the ALJ in his determination. (*See* Doc. 28); *see also Stowe*, 2021 WL 2912477, at *7 ("[A] party abandons a claim not adequately briefed on appeal and fails to adequately brief [a] claim when he raises it in a perfunctory manner without supporting arguments or authority.").

testimony.  *See Osborn*, 194 F. App'x at 666 (finding that an ALJ's explicit credibility determination as to a plaintiff's testimony sufficiently implied a rejection of the plaintiff's wife's testimony as well).  Thus, the Undersigned finds that the ALJ did not err by failing to "weigh" or determine the persuasiveness of Plaintiff's or his parents' written and oral testimony.

Accordingly, the Undersigned finds that the ALJ properly assessed the non-medical evidence of record and his decision is supported by substantial evidence.  Consequently, the Undersigned finds that the ALJ's decision is due to be affirmed as to this sub-issue.

### 4.   The ALJ Properly Assessed Plaintiff's Limitations Under the Paragraph B Criteria.

Concerning the fourth sub-issue, Plaintiff argues that the ALJ erred in his assessment of the Paragraph B criteria.  (Doc. 28 at 29-30).  Specifically, Plaintiff contends that the ALJ should have considered:  (1) Plaintiff's inability to read in evaluating Plaintiff's limitation in understanding, remembering or applying information; (2) that "Plaintiff did not have the ability to focus," in evaluating Plaintiff's limitation in concentrating, persisting or maintaining pace; and (3) that "Plaintiff required reminders to perform self-care, couldn't manage money, had difficulties with performing . . . tasks around the house, couldn't travel alone . . . , and had no ability to function independently," in evaluating Plaintiff's limitation in adapting or managing oneself.  (*Id.*).

In response, the Commissioner contends that "[Plaintiff] fails to explain the import of [his] assertion [because h]e does not argue that his impairments meet or equal a listing, and otherwise, the Paragraph B criteria are just a preliminary step before the ALJ determines a claimant's RFC." (*Id.* at 37).

The Undersigned notes that the ALJ's decision specifically states:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. at 21-22). While Plaintiff does not argue that his impairments meet or equal a listing, he does appear to argue that the ALJ erred in his assessment of the Paragraph B findings and their impact on the RFC. Accordingly, the Undersigned reviews the ALJ's assessment of the Paragraph B findings and their impact on the RFC.

Notably, the ALJ stated that "step 4 . . . *requires a more detailed assessment* of the areas of mental functioning." (Tr. at 22). In fact, upon a review of the record, the Undersigned finds that the ALJ did include a detailed analysis of Plaintiff's mental impairments at step four. Specifically, the ALJ accounted for and analyzed the exact evidence that Plaintiff argues he should have considered. (*See id.* at 23 ("[He] has no reading skills."), 26 ("[The prior ALJ] found that [Plaintiff's RFC should] not require any reading."), 26-27 ("In testing by Dr. Rivera, [Plaintiff] had low average scores on

the Woodcock Johnson-IV Achievement tests in Broad Reading."), 27 ("[I]n October 2013 . . . Dr. Villar [sic] . . . diagnosed [Plaintiff] with a reading disorder."), 24 ("[Plaintiff] appeared to present significant difficulties in attention and concentration."), 26 ("[Plaintiff] attended to questions and sustained attention and concentration during the exam, but required some redirection."), 29 ("Exams by . . . Dr. Hartman . . . regularly reflect and note that psychotropic medications do a good job of controlling [Plaintiff's] ADHD.").  The ALJ considered Plaintiff's alleged mental impairments and the limitations they caused on Plaintiff's ability to work. (*Id.*).  Thus, the Undersigned finds that the ALJ considered all of the evidence of record in determining the RFC limitations caused by Plaintiff's mental impairments and the ALJ's determination is supported by substantial evidence.

Moreover, to the extent that Plaintiff cites evidence of record that he contends supports a different conclusion, the Undersigned finds that the existence of this evidence does not require remand.  It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  Here, the ALJ considered all of the evidence that Plaintiff highlights and incorporated his assessment of it into the RFC.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them."  *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d

780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178

(11th Cir. 2011)).

Accordingly, the Undersigned finds that the RFC adequately accounts for all

of Plaintiff's mental limitations because substantial evidence shows that the ALJ

properly assessed the evidence of record.  Thus, the Undersigned finds that the ALJ's

decision is due to be affirmed as to this sub-issue.

### 5.   The ALJ Properly Summarized the Record.

As to the final sub-issue, Plaintiff contends that the ALJ erred by

misrepresenting various portions of the record.  (Doc. 28 at 29-32).  Plaintiff broadly

asserts that "the ALJ failed to analyze certain facts, while using others to support his

denial or Plaintiff, within the same exhibited medical record."  (*Id.* at 29).  More

specifically, Plaintiff argues that the ALJ erred by stating that Plaintiff "'would not

like to work in isolation, because he likes talking to people' [when] Plaintiff actually

said . . . that he would 'completely lose his mind.'"  (*Id.* at 30 (citing Tr. at 22, 55)).

Additionally, Plaintiff argues that the ALJ erred by characterizing Plaintiff's WAIS-

IV, WMI, PSI, and WJ IV ACH[5] scores as "average," when many were actually

"below average."  (*Id.* at 31 (citing Tr. at 442)).

In response, the Commissioner contends that the ALJ properly assessed all of

the evidence and did not commit a harmful error by paraphrasing Plaintiff's

---

[5]  These acronyms each represent an objective medical test performed by Plaintiff's
physicians.  The tests were used during a Psychological Evaluation to determine
Plaintiff's intellectual, academic, and emotional functioning.  (*See* Tr. at 435-46).

testimony.  (*Id.* at 34 (citing Tr. at 324, 411)).  Moreover, the Commissioner contends that the ALJ specifically noted that several of Plaintiff's objective test scores placed Plaintiff in the "below average" range.  (*Id.* at 34-35 (citing Tr. at 24, 439-40, 443)).

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, upon reviewing the record, the Undersigned finds that the ALJ's RFC determination is supported by substantial evidence in the record and the ALJ considered Plaintiff's medical condition as a whole, including the non-medical testimonial evidence.  During the hearing, Plaintiff testified as follows:

> Q Sir, if you had been put in a room where no coworkers were around and you were supposed to do the same job, would you be able to do that all day long?
>
> A Probably not.
>
> Q Why not?
>
> A Because I would probably get upset and completely lose my mind if I was by myself because, basically, I like talking to people.
>
> Q You indicated that you lost the job because you were socializing too much, so I'm going to assume Lowe's could find a room to put you in and could give you a job where you weren't supposed to socialize with anybody and I just want to know if we eliminated the distraction of other people, would you be able to stay on task?

A Yes.

Q For how long?

A Probably the whole time.

Q So you'd be able to work eight hours a day, forty hours a week putting those labels on that without a problem?

A Yes, sir.  Pretty much.

Q So you wouldn't lose your mind then?

A No.

(Tr. at 55).  The Undersigned finds that the ALJ's summary of this testimony, that "[Plaintiff] would not like to work in isolation, because he likes talking to people," (*see id.* at 22), is not a material misrepresentation of Plaintiff's testimony such that the ALJ's decision is no longer supported by substantial evidence, warranting remand. Rather, the ALJ's paraphrasing accurately reflects the gist of Plaintiff's testimony.

Similarly, concerning the ALJ's assessment of Plaintiff's objective test scores, the Undersigned finds that the ALJ did not commit an error.  Rather, the ALJ accurately noted that Plaintiff received both average and below average scores in the objective mental examination tests administered to him.  (*See id.* at 24, 26-27; *see also id.* at 388-89, 442-44, 446).

The Undersigned finds that the ALJ considered Plaintiff's medical condition as a whole and assessed the relevant evidence of record.  Moreover, the ALJ did not err by accurately summarizing the evidence.  Thus, the Undersigned finds that the ALJ's decision is due to be affirmed as to this sub-issue.

**B.      The ALJ Properly Considered and Evaluated All of Plaintiff's Impairments and His Determination Is Supported by Substantial Evidence.**

Plaintiff next argues that the ALJ erred in his RFC determination because he disregarded all the limitations caused by Plaintiff's impairments in combination. (Doc. 28 at 48-53 (citations omitted)).  Specifically, Plaintiff again argues that the ALJ erred by failing to mention several of Plaintiff's impairments, including "myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, vitamin D deficiency, and depression."  (*Id.* at 48-49).  Further, Plaintiff asserts that, because the ALJ failed to assess these impairments, the RFC determination was not supported by substantial evidence and his hypothetical questions to the VE were insufficient.  (*Id.* at 50).

Plaintiff also contends that the ALJ should have included limitations in Plaintiff's RFC to "instructions being given verbally, and frequent redirection and/or reminders."  (*Id.* at 51).

Additionally, Plaintiff argues that the ALJ should not have relied on Plaintiff's ability to work for Lowe's because Plaintiff only obtained the position through vocational rehabilitation and the help and training of a life coach.  (*Id.*).  Plaintiff again asserts that the ALJ "undervalued" both Plaintiff's and his parents' testimony and the opinions of "numerous medical professionals and experts."  (*Id.* at 51-52).

Finally, Plaintiff claims that "[b]y failing to consider all of Plaintiff's medical conditions or associated symptoms fully, the ALJ's questioning of the [VE] is rendered even more ineffective and incomplete . . . [because the hypothetical

questions] failed to encompass Plaintiff's actual impairments and limitations." (*Id.* at 52-53).

In response, the Commissioner contends that the ALJ considered all of the evidence in finding that Plaintiff was not disabled. (*Id.* at 53-56). Specifically, the Commissioner asserts that the ALJ need not discuss every single piece of evidence in the record, as long as his decision is not a broad rejection of Plaintiff's claim such that the reviewing court cannot conclude that the ALJ considered the claimant's medical condition as a whole. (*Id.* (citations omitted)). The Commissioner also argues that Plaintiff has not shown that his alleged "myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, and vitamin D deficiency," lasted for a period of twelve months, so that they would meet the duration requirement of an impairment. (*Id.* at 54 (citations omitted)).

Moreover, the Commissioner asserts that Plaintiff has not pointed to any evidence showing that the ALJ was required to impose his recommended RFC limitations. (*Id.* at 55). The Commissioner also argues that the ALJ could rely on Plaintiff's time spent working for Lowe's because after the ninety-day vocational rehabilitation period ended, Plaintiff maintained the job on his own for over a year. (*Id.* (citations omitted)). Finally, the Commissioner re-asserts his previous arguments regarding the sufficiency of the ALJ's assessment of the medical and non-medical evidence of record. (*Id.* at 55-56).

"The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.  *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).  In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record.  *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).  Thus, the ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

As discussed fully above, the Undersigned finds that Plaintiff's failure to raise the five unmentioned diagnoses, "myopic astigmatism, amblyopia, bilateral elbow pain, hyperlipidemia, and vitamin D deficiency," in his disability application or during the hearing is sufficient to dispose of his argument.  *See Street*, 133 F. App'x at 627.

As for the RFC limitations proposed by Plaintiff, (*see* Doc. 28 at 51 ("The Commissioner [erred by failing] to include . . . limitations . . . such as instructions being given verbally, and frequent redirection and/or reminders.")), the Undersigned is not persuaded that the ALJ was obligated to incorporate them into Plaintiff's RFC.

As previously stated, the scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts*, 841 F.2d at 1080, and

whether the findings are supported by substantial evidence, *Richardson*, 402 U.S. at 390.  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.  In making an RFC determination, the ALJ is required to consider all of the evidence of record. *Phillips*, 357 F.3d at 1238.

As thoroughly discussed above, the ALJ properly considered the evidence of record, both medical and non-medical, in rendering his decision.  (*See* Tr. at 17-31). Moreover, Plaintiff fails to identify the specific evidence that obligates the ALJ to incorporate Plaintiff's proposed limitations.  Without highlighting a specific piece of evidence that the ALJ improperly assessed or failed to consider, Plaintiff fails to present a sufficient basis to overturn the ALJ's RFC determination.  To the extent that Plaintiff impliedly incorporates his prior arguments regarding the ALJ's assessment of the evidence, (*see* Doc. 28 at 23-32, 48-50), the Undersigned is not persuaded.  Rather, as discussed throughout this Report and Recommendation, the Undersigned finds that the ALJ has not erred in his evaluation of the evidence of record.  The Undersigned finds that the ALJ sufficiently assessed the evidence of record and, therefore, substantial evidence supports his RFC determination despite that it does not include Plaintiff's additional proposed limitations. *See Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (finding that an ALJ is not required to include findings that the ALJ properly rejected as unsupported).

As to Plaintiff's argument that the ALJ should not have relied on Plaintiff's short work history at Lowe's, the Undersigned is not persuaded.  In fact, the regulations specifically state that:

> Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.  We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

20 C.F.R. §§ 404.1571, 416.971.  In the context of this regulation, the Undersigned cannot find that the ALJ erred by considering Plaintiff's ability to work for Lowe's, even though the work did not constitute substantial gainful activity.  Additionally, the Undersigned notes that the ALJ specifically acknowledged that Plaintiff obtained the Lowe's job "through Vocational Rehabilitation, and a life coach supervised him for 90 days, but thereafter he worked on his own and worked a full year in 2016." (Tr. at 22).  Thus, the Undersigned is not persuaded by Plaintiff's argument that the ALJ erred in relying on Plaintiff's vocational experience.

Finally, concerning Plaintiff's argument that the VE's testimony did not constitute substantial evidence because the ALJ's hypothetical questions were insufficient due to his failure to properly consider Plaintiff's and his parents' testimony as well as the opinions of "numerous medical professionals and experts," the Undersigned is not persuaded.  For the reasons stated in the analysis above, the Undersigned finds that the ALJ properly considered both the medical and non-medical evidence of record.  To that end, the Undersigned finds that the ALJ completed his RFC determination in accordance with the SSA's revised 2017

regulations and, therefore, his RFC determination was supported by substantial evidence. Thus, the ALJ's hypothetical questions to the VE were complete and incorporated all of Plaintiff's impairments and their associated limitations. *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) ("[An] ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

The Undersigned finds that the ALJ's decision is supported by substantial evidence, he did not err in his assessment of the record, and his decision should be affirmed as to this issue.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.    The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on November 23, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  _See_ 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties